UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL MILLEDGE,

Petitioner,

v. CASE NO. 6:06-cv-734-Orl-19DAB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

Respondents.

---

**ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Respondents filed a response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 10). Petitioner filed a reply to the response (Doc. No. 14).

***I. Procedural History***

Petitioner was charged by information with robbery with a weapon. After a jury trial, he was found guilty of robbery and sentenced to a twenty-five year term of imprisonment. Petitioner appealed his conviction and sentence. By order dated August 13, 2002, the Florida Fifth District Court of Appeal *per curiam* affirmed, and mandate was issued on August 30, 2002. *Milledge v. State*, 826 So. 2d 318 (Fla. 5th DCA 2002).

Petitioner filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief on September 4, 2003. After conducting an evidentiary hearing, the trial court denied the motion. The appellate court *per curiam* affirmed by order dated December 20, 2005, and mandate was issued on January 6, 2006. *Milledge v. State*, 918 So. 2d 310 (Fla. 5th DCA 2005).

***II. Claim One***

Petitioner raises one claim in his instant habeas petition: "Whether [his] Fourteenth Amendment right under the United States Constitution was violated based on newly discovered evidence of the fact that the prosecutor allowed perjured testimony into evidence." (Doc. No. 1 at 5.) Melissa Foster, Petitioner's co-defendant, testified at his trial that she was not getting any benefit for testifying against him.[1] According to Petitioner,

---

[1]Ms. Foster had two pending criminal cases at the time of Petitioner's trial: a 2001 grand theft auto case, and the 2000 case stemming from the incident involving Petitioner. Approximately one month prior to Petitioner's trial, Ms. Foster entered a guilty plea in the 2001 case; however, she did not pled guilty in the 2000 case until August of 2001, the month after Petitioner's trial. At the time of the August plea, Ms. Foster was sentenced to probation for both the cases.

At Petitioner's trial, Ms. Foster testified as follows regarding whether she had a deal concerning her testimony:

> Q. What are you charged with in this case?
> A. I'm charged with grand theft.
> Q. Do you expect that –
> Do you understand what kind of sentence you are going to get?
> A. No, sir.
> Q. Do you think that testifying here today against Mr. Milledge would help your position in this case?
> A. No, sir.
> Q. You don't?

both Ms. Foster and the prosecutor were aware that Ms. Foster would receive a more lenient sentence in return for her testimony.

Petitioner raised this claim in his Rule 3.850 motion. After conducting an evidentiary hearing on the claim, the state trial court concluded that there had been "no showing that Melissa Foster's testimony that she had not been offered a deal was false" and that even if there had been a deal, "there was no showing that her statements were material." (Appendix XII at 5.) Therefore, the state trial court determined that Petitioner

---

A. No.
Q. Do you think it would hurt your position.
A. I have no idea what it would do.

* * *

Q. You know you have a right to remain silent has anybody told you that?
A. Yes.
Q. And you are volunteering giving up that right in order to be here today?
A. Yes I am.
Q. And that is because you expect to get a benefit in your case?
A. No, because this man was a gentleman – [the victim] was a friend of mine and still is.

***

Q. Has anybody put an offer on the table for you to testify today?
A. No, they haven't sir.
Q. You don't know what is going to happen to you in your case --
A. I sure don't.
Q. – go to trial or plea out?
A. No I have no idea.
Q. Nobody has entered into any king of plea negotiations?
A. No, sir.

(Appendix II at 138-39, 151.)

had failed to establish a claim under either *Giglio v. United States*, 405 U.S. 150 (1972), or *Brady v. Maryland*, 373 U.S. 83 (1963). This determination was affirmed on appeal.

***A. Applicability of 28 U.S.C. Section 2254(d)***

Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

As discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state courts applied federal law incorrectly, habeas corpus relief is appropriate only if that application was "objectively unreasonable."

*Id*. Furthermore, a determination of a factual issue made by a state court shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See id*. at 835-36; 28 U.S.C. § 2254(e)(1).

***B. Governing Law***

***1. Giglio v. United States***

Under *Napue v. Illinois*, 360 U.S. 264, 269 (1959), and *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), a defendant's due process rights are violated when the prosecution knowingly fails to correct a material falsehood in the testimony of any witness. *Id*. This rule covers not only inculpatory false testimony, but it also extends to falsehoods tending to enhance the credibility of a witness. *Napue*, 360 U.S. at 269. "[T]he falsehood is deemed to be material 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).

***2. Brady v. Maryland***

To prevail on a claim brought under *Brady v. Maryland*, 373 U.S. 83 (1963), a petitioner must demonstrate the following:

> (1) that the Government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir.), *cert. denied*, 493 U.S. 932 (1989). As the United States Supreme Court has decreed "evidence is 'material' under *Brady*, and the failure to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-110 (1976).

***C. Discussion of Claim One Under Giglio***

In assessing Petitioner's claim, the state trial court correctly cited the standards for evaluating claims under both *Giglio* and *Brady*. (Appendix XII at 3-5.) However, in evaluating the *Giglio* claim, the state trial court found that "even if [Ms. Foster] had testified to a deal there is not any reasonable likelihood that this **would** have affected the judgment." *Id*. at 5-6 (emphasis added). The use of the words "**would have,**" rather than the much less stringent "**could have**" wording used in *Giglio*, causes this Court to question whether the Florida courts applied the correct materiality test in evaluating Petitioner's *Giglio* claim. This Court is aware that "a misstatement of the law may be insufficient to find a state court decision contrary to clearly established law; rather, the state court's decision must have resulted from its application of an incorrect standard." *Ventura v. Att'y Gen., Fla.*, 419 F.3d 1269, 1285-86 (11th Cir. 2005). Furthermore, "§ 2254(d) requires that state-court decisions be given the benefit of the doubt. Readiness to attribute error is

inconsistent with the presumption that state courts know and follow the law." *Holland v. Jackson*, 542 U.S. 649, 654 (2004) (citations and internal quotation marks omitted).

Even assuming that the state court's assessment of Petitioner's *Giglio* claim was premised on an incorrect standard of law, this alone does not compel relief. The relevant question becomes whether the state court determination that even if Ms. Foster had testified to a deal it would have been immaterial is contrary to clearly established federal law. It is not enough, in other words, that the state court misstated the *Giglio* rule. Rather, the habeas writ will be granted only if the state court's decision itself is contrary to clearly established federal law.[2]

The United States Supreme Court has emphatically and repeatedly condemned the knowing use of false testimony by a prosecutor. *See, e.g., Miller v. Pate*, 386 U.S. 1, 7 (1967) ("More than 30 years ago this Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false testimony.") (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). Not only does such prevarication taint the judicial proceedings, but also its use contravenes the highest duty of the prosecutor to see justice done, not merely to prevail. *Berger v. United States*, 295 U.S. 78, 88 (1935) ("[The prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all . . .").

[2]*Giglio*, decided in 1972, is clearly established law, meaning it enunciates a United States Supreme Court holding. *Williams*, 529 U.S. at 412 ("[The] statutory phrase [clearly established federal law] refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision.").

Nevertheless, the United States Supreme Court has not defined prosecutorial misconduct of this sort to be a "structural error," meaning an error of the sort that warrants mandatory reversal. *Neder v. United States*, 527 U.S. 1, 9 (1999) (stating that only a "very limited class of cases" involves structural error and is subject to "automatic reversal": complete denial of counsel; biased trial judge; racial discrimination in selection of grand jury; denial of self-representation; denial of public trial; and defective reasonable doubt instruction). Instead, when, as here, it is a trial error, reversal is required only when the misconduct is material as defined by *Giglio* and its progeny. *Brown v. Wainwright*, 785 F.2d 1457, 1465 (11th Cir. 1986) ("Not every use of false evidence entitles a defendant to the writ.") (citations omitted).

This Court holds that even if Ms. Foster's testimony concerning a deal was false, it was immaterial because presentation of the correct facts could not have altered the outcome of the trial. Though Petitioner aptly characterizes Ms. Foster as an important witness, it was not just on the strength of her testimony that the jury rendered its verdict. Ms. Foster's inculpation of Petitioner was corroborated by the victim. The victim testified that Petitioner smashed him in the face with a glass mason jar, hit him several times with a crockpot, and pounded him with his fists. (Appendix II at 189-92.) During the beating, Petitioner directed Ms. Foster to take the victim's wallet, and in fact Petitioner did not stop beating the victim until Ms. Foster had complied. *Id*. at 192-93, 203-04, 210-12, 215. Thus, even if the jury had been made aware of Ms. Foster's purported deal, it is inconceivable that this revelation would have so discredited her as to alter the outcome of Petitioner's

trial.[3] Accordingly, Petitioner's claim under *Giglio* is denied because correcting Ms. Foster's allegedly untruthful testimony could not have resulted in a different verdict.

***D. Discussion of Claim One Under Brady***

The state court correctly cited and applied the *Brady* standard in assessing this component of Petitioner's claim. Therefore, the first clause of § 2254(d)(1) has not been satisfied. Furthermore, Petitioner has not demonstrated that the state trial court's determination was an unreasonable application of *Brady*. During the evidentiary hearing,

---

[3]The Court also notes that Petitioner's defense counsel argued throughout the proceedings that Ms. Foster had a deal and was getting special treatment for her testimony. During opening statements he advised the jury to "listen carefully to her testimony" because

> whether or not it's just kind of a wink of the eye[, s]he is getting special treatment for her testimony. . . . Melissa Foster is a co-defendant whose case is not wrapped up yet and she is hoping to get special treatment from the State in order to save her own rear-end from going to prison, and she'd say anything to you and that is our position.

(Appendix II at 111, 113.) Defense counsel reiterated the theory during his closing argument:

> [Ms. Foster] said she doesn't expect to get any kind of benefit from testifying on behalf of the State against Mr. Milledge.
>
> I suggest to you that is an absolute lie. She hopes to save her own skin by testifying according to the theory of the State's case which is Mr. Milledge is the one who needs to be nailed here not her.
>
> I suggest to you that she absolutely expects to get a benefit, expects to be treated gently in the prosecution against her because she took the stand and testified.

(Appendix II at 271-72.)

counsel for Ms. Foster testified that he wanted a written agreement from the prosecutor that if Ms. Foster testified truthfully at Petitioner's trial she would receive probation. (Appendix XI at 37.) Despite involved negotiations, the prosecutor refused to give a written agreement. *Id*. According to Ms. Foster's counsel,

> [t]he way it ended was, and the best way I can describe it, it was [the prosecutor] said to me, we're out in the hallway, "Look, we all know what's going to happen. We all know she's going to get probation. We all know what's going to happen. I'm not giving you a written agreement to that effect." I understood that to mean that it was at least implied and my understanding was that if she testified truthfully against [Petitioner], she would receive probation.

*Id*. at 37-38. Ms. Foster's counsel admitted that at her plea hearing his partner truthfully represented to the state trial judge that there was no agreement as to sentence. (Appendix XI at 44-45.) He also admitted that the prosecutor could have asked for prison time at the sentencing. *Id*. at 49-52.

This Court agrees with the state court's determination that Petitioner has not shown that favorable impeaching evidence was suppressed by the State. Furthermore, for the reasons discussed in connection with the *Giglio* claim, even if a deal did exist there does not exist a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different.

***III. Conclusion***

In the present case, the Court finds that Petitioner has not demonstrated, and this Court is unable to conclude, that the state court's decision was either "contrary to" or an "unreasonable application of" clearly established federal law. Moreover, Petitioner has not

demonstrated that the state court made an unreasonable determination of the facts in light of the evidence presented. Claim one must be denied pursuant to section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1. This case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this __9th___ day of January, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies to:
sa 1/9
Michael Milledge
Counsel of Record